# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

SONA SUE STATEN,                 Case No. 1:10-cv-864

    Plaintiff                           Dlott, J.
                                       Litkovitz, M.J.

vs

MICHAEL J. ASTRUE,            **REPORT AND**
COMMISSIONER OF               **RECOMMENDATION**
SOCIAL SECURITY,

    Defendant

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of Specific Errors (Doc. 8) and the Commissioner's Memorandum in Opposition. (Doc. 10).

## PROCEDURAL BACKGROUND

Plaintiff was born in 1967 and was 42 years old at the time of the administrative law judge's (ALJ) decision. Plaintiff finished the tenth grade and did not receive a GED. Plaintiff has past relevant work experience as a fast food cashier, drive-thru teller, and nurse's aide. (Tr. 99, 134).

Plaintiff filed a DIB application on August 10, 2008, alleging a disability onset date of March 16, 1990 due to back pain and depression. (Tr. 99-100). The application was denied initially and upon reconsideration. (Tr. 51-53, 62-63). Plaintiff then requested and was granted a *de novo* hearing before an ALJ. (Tr. 68-73). On November 4, 2009, plaintiff, represented by

counsel, appeared and testified at a hearing before ALJ Algernon W. Tinsley. (Tr. 19-40, 44-46). Also, a vocational expert (VE) appeared and testified. (Tr. 41-44, 46-47).

On February 1, 2010, the ALJ issued a decision denying plaintiff's DIB application. (Tr. 9-12). The ALJ found that plaintiff last met the insured status requirements for DIB on June 30, 1992. (Tr. 9). The ALJ determined that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through the date last insured. (Tr. 11). Consequently, the ALJ found that plaintiff was not under a disability at any time from the alleged onset date to the date last insured and therefore not entitled to disability benefits. (Tr. 12).

Plaintiff's request for review by the Appeals Council was denied (Tr. 1-5), making the decision of the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for DIB, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423(a). Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations which is the same for purposes of both DIB and SSI benefits. See 20 C.F.R. §§ 404.1520, 416.920; *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the

individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Sec'y of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Sec'y of H.H.S.*, 667 F.2d 524 (6th Cir. 1981).

The Commissioner is required to consider the individual's impairments in light of the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work. 20 C.F.R. § 404.1525(a). If the individual suffers from an impairment which meets or equals one set forth in the Listing, the Commissioner renders a finding of disability without consideration of the individual's age, education, and work experience. 20 C.F.R. § 404.1520(d); *Kirk,* 667 F.2d at 528.

An impairment can be considered as not severe only if the impairment is a "slight abnormality" which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience. *Farris v. Sec'y of H.H.S.,* 773 F.2d 85, 90 (6th Cir.1985) (citation omitted); *see also, Bowen v. Yuckert,* 482 U.S. 137 (1987).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Sec'y of H.H.S.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that

4

plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Sec'y of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Sec'y of H.H.S.*, 735 F.2d 962, 964 (6th Cir. 1984) (per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Sec'y of H.H.S.*, 820 F.2d 768, 771 (6th Cir. 1987).

When the grid is not applicable, the Commissioner must make more than a generalized finding that work is available in the national economy; there must be "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs." *Richardson*, 735 F.2d at 964 (emphasis in original); *O'Banner*, 587 F.2d at 323. Taking notice of job availability and requirements is disfavored. *Kirk*, 667 F.2d at 536-37 n.7, 540 n.9. There must be more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *Richardson*, 735 F.2d at 964; *Kirk*, 667 F.2d at 536-37 n.7. The Commissioner is not permitted to equate the existence of certain work with plaintiff's capacity for such work on the basis of the Commissioner's own opinion. This crucial gap is bridged only through specific proof of plaintiff's individual capacity, as well as proof of the requirements of the relevant jobs. *Phillips v. Harris,* 488 F. Supp. 1161 (W.D. Va. 1980) (citing *Taylor v.*

5

*Weinberger,* 512 F.2d 664 (4th Cir. 1975)). When the grid is inapplicable, the testimony of a vocational expert is required to show the availability of jobs that plaintiff can perform. *Born,* 923 F.2d at 1174; *Varley* v. *Sec'y of H.H.S.,* 820 F.2d 777, 779 (6th Cir. 1987).

A mental impairment may constitute a disability within the meaning of the Act. *See* 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). However, the mere presence of a mental impairment does not establish entitlement to disability benefits. In order for a claimant to recover benefits, the alleged mental impairment must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory findings or psychological test findings. 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00(B); *Moon v. Sullivan,* 923 F.2d 1175, 1182 (6th Cir. 1990).

Alleged mental impairments are evaluated under the same sequential analysis as physical impairments. Once the Commissioner determines that a mental impairment exists, he/she must then evaluate the degree of functional loss it causes according to a special procedure. 20 C.F.R. §§ 404.1520a and 416.920a. A standard review technique is completed at each level of administrative review for mental impairments. *Id.*

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991).

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 247 (6th

Cir.2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir.2001); *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec'y of H.H.S.,* 753 F.2d 517, 519 (6th Cir.1985) (citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir.1984)).

The ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers,* 486 F.3d at 247. Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

7

## MEDICAL RECORD

The medical record is comprised of a 2008 assessment from a non-examining agency psychologist and a 2009 letter from plaintiff's treating physician. There is no evidence in the record of plaintiff's medical treatment prior to 2009.

On June 10, 2008, non-examining agency psychologist Roy Shapiro, Ph.D., determined that there was insufficient medical evidence in the record for him to form an opinion regarding plaintiff's mental health impairment. (Tr. 167-80). Dr. Shapiro also noted that there was a coexisting nonmental impairment requiring referral to another medical specialist. (Tr. 167).

Plaintiff's treating physician, Greg Chaney, M.D., submitted a letter on October 9, 2009, stating that he had treated plaintiff since August 2004. Dr. Chaney opined that plaintiff suffers from numerous medical problems, including: diabetes mellitus, hypercholesterolemia, chronic obstructive pulmonary disease, asthma, fatigue, osteoarthritis, diverticulitis, edema, chest pain syndrome, anxiety, depression, neck pain, and low back pain with left leg radiculopathy. Dr. Chaney reported that plaintiff had previously seen his colleague, Myra Frazier, on January 9, 2003, for complaints of low back pain with left leg radiculopathy that had lasted for ten years and that plaintiff was referred to a neurologist. Dr. Chaney opined that plaintiff was completely and totally disabled from all gainful employment. (Tr. 185).

## PLAINTIFF'S TESTIMONY AT THE HEARING

At the hearing, plaintiff testified that she was last employed in 1990 and had past work experience as a cashier in fast food restaurants and as a nurse's aid in a nursing home. (Tr. 24-27). Plaintiff testified that she was injured on March 16, 1990 due to a fall she sustained while at

home. (Tr. 27). She reported that she was unable to move for hours after the initial fall, and that her husband drove her to Williamson Memorial Hospital that night where she was x-rayed and sent home with pain medication and muscle relaxers. *Id.*

Plaintiff stated that she did not return to the hospital for treatment, but that she regularly complained of back pain to her family doctor. (Tr. 28). Plaintiff was unable to recall the dates of her treatment with her family doctor, but testified that she was referred to a doctor in Charleston. *Id.* Plaintiff stated this doctor, whose name she did not remember, gave her a physical assessment and advised her that she "would have to live with it." (Tr. 28-29). Plaintiff next sought treatment in 1994 or 1995 with Dr. Reddy in Lenore City for back pain and she was given medications. (Tr. 29).

Plaintiff further testified that she worked at Lee's Chicken House in 1991 for four to six months before quitting the job due to back pain. (Tr. 29). Plaintiff reported that she is currently unable to work because of back and leg pain resulting from herniated discs. (Tr. 30). Plaintiff testified that the pain was in her low back on the left side and she was currently seeking treatment with Dr. David Caraway at St. Mary's Pain Clinic. *Id.* Plaintiff reported that she receives pain medication and injections in her back which has increased her ability to walk, but that she still has pain. (Tr. 31).

Plaintiff described her pain prior to her date last insured, in June 1992, as an 8 on a scale of 1 to 10 on a bad day, and a 6 on an average day. (Tr. 32). Plaintiff testified that prior to her injury, she was able to ride a bike 20 miles a day and clean her home without difficulty, but now is unable to bicycle at all and cleaning is hard for her so she gets help from family members. (Tr.

33). Plaintiff stated that between her 1990 injury and her date last insured, she would have to walk bent over, at most could walk three blocks at a time, and was unable to stand for more than 15 minutes. (Tr. 33-34). Plaintiff testified that she had difficulty sitting in chairs, and would have to stretch and lay down after an hour of sitting. (Tr. 34-35).

Plaintiff explained that she waited a long time before filing for disability benefits because her husband had recently retired and her household income has been reduced. (Tr. 35). Plaintiff testified that she had difficulty climbing stairs and ramps, vacuuming and mopping, gardening outside, bending at the waist, and reaching overhead, and reported that she has fallen many times due to the pain that radiates from her back down her leg. (Tr. 35-36). Plaintiff reported that she currently uses a cane to walk and keep from falling and uses topical creams and salt rubs for pain, but is not taking pain medications. (Tr. 36-37, 45). Plaintiff stated that two doctors, Dr. Chaney and Dr. Caraway, advised her to use a cane, but that she had not required medical treatment for a fall since her 1990 injury. (Tr. 45).

Plaintiff testified that her abilities to focus and concentrate were diminished due to her pain and that she became irritable and depressed. (Tr. 37-38). Plaintiff explained that she did not seek treatment for her depression because she was embarrassed. (Tr. 38). She reported nightly sleep disturbances due to her pain, and described that during a typical day she would read, watch television, and sew. (Tr. 39). Plaintiff testified that she attends church regularly. (Tr. 40).

10

### THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The VE testified that plaintiff had past relevant work experience as a fast food cashier and drive-thru teller, which was light and unskilled, and as a nurse's aide, which was medium and semiskilled work. (Tr. 42-43). The VE clarified that plaintiff reported having to lift patients weighing over 100 pounds, in which case her work as a nurse's aid would be classified as very heavy and unskilled. (Tr. 43). The ALJ asked the VE to assume an individual of plaintiff's age, education, and work experience that was limited to medium exertional level work. *Id.* The VE testified that such an individual would be able to perform plaintiff's past relevant work as a fast food cashier and drive-thru teller, but would only be able to perform work as a nurse's aide at a medium exertional level. (Tr. 44). The VE further testified that plaintiff would be able to do medium level work as a stock clerk and dish washer; light level work as a machine tender, product inspector, and hand packager; and sedentary work as a bench worker and grader/sorter. *Id.*

Plaintiff's attorney asked the VE to assume an individual of plaintiff's age, education, and work history, with the limitations contained in plaintiff's testimony. (Tr. 46-47). The VE testified that such an individual would be excluded from work. (Tr. 47).

### OPINION

The pertinent period of time at issue concerns plaintiff's work abilities and limitations between March 16, 1990 and June 30, 1992. (Tr. 11, 101). To establish her claim for disability benefits, plaintiff was required to establish that she was disabled on or before June 30, 1992, the date her insured status expired for purposes of DIB. *See Garner v. Heckler*, 745 F.2d 383, 390

11

(6th Cir. 1984). While plaintiff was not required to prove she was disabled for a full twelve months *prior* to the expiration of her insured status, she was required to prove "the onset of disability" prior to the expiration of her insured status and that such disability lasted for a continuous period of twelve months. *See Gibson v. Secretary,* 678 F.2d 653, 654 (6th Cir. 1982); 42 U.S.C. § 423(d)(1)(A).

Post insured status evidence of new developments in plaintiff's condition is generally not relevant. *Bagby v. Harris,* 650 F.2d 836 (6th Cir. 1981). *See also Higgs v. Bowen,* 888 F.2d 860, 863 (6th Cir. 1988) (Evidence post-dating the expiration of a claimant's insured status is only minimally probative.). However, such evidence may be examined when it establishes that the impairment existed continuously and in the same degree from the date that plaintiff's insured status terminated. *Johnson v. Sec'y of H.E.W.,* 679 F.2d 605 (6th Cir. 1982). *See also King v. Sec'y of H.H.S.,* 896 F.2d 204, 205–06 (6th Cir. 1990) (Post-expiration evidence may be considered, but it must relate back to plaintiff's condition prior to the expiration of her date last insured).

Plaintiff assigns two errors in this case: (1) the ALJ erred by not seeking additional evidence pertaining to plaintiff's alleged physical and mental limitations; and (2) the ALJ erred by not affording sufficient weight to plaintiff's subjective complaints.[1] For the following reasons, the Court finds the ALJ's decision is supported by substantial evidence and should be affirmed.

---

[1] Plaintiff's Statement of Errors also includes a third argument - that the ALJ's decision is not supported by substantial evidence. As this is the standard of review the Court applies to all determinations made by the ALJ, this third argument is superfluous. *See Hephner,* 574 F.2d 359.

12

I.  **Substantial evidence supports the ALJ's determination that plaintiff did not suffer from a medically determinable impairment from the alleged onset date of March 16, 1990 through plaintiff's date last insured of June 30, 1992.**

As discussed above, in determining whether an individual is disabled, the ALJ is required to undergo a five step sequential analysis. Here, the ALJ determined at step one that plaintiff had not engaged in substantial gainful activity during the period from her alleged disability onset date of March 16, 1990 through June 30, 1992, the date her insured status lapsed, and proceeded to the second step. (Tr. 11). "At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment . . . we will find that you are not disabled." 20 C.F.R. § 404.1520(a)(4)(ii).

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). In the physical context, this means a significant limitation upon a plaintiff's ability to walk, stand, sit, lift, push, pull, reach, carry or handle. 20 C.F.R. §§ 404.1521(b)(1), 416.921(b)(1). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. § 404.1521(b). Plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Sec'y of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be

expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris,* 773 F.2d at 90 (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "*de minimus* hurdle" in the sequential evaluation process. *Higgs,* 880 F.2d at 862. *See also Rogers v. Comm'r,* 486 F.3d 234, 243 n.2 (6th Cir. 2007).

Here, the ALJ reasonably found that the objective medical evidence of record did not support a finding that plaintiff suffered from a medically determinable impairment from her alleged onset date of March 16, 1990 through her date last insured. As noted by the ALJ, the record contains only one medical record: the October 2009 letter from Dr. Chaney referencing plaintiff's medical complaints as of January 9, 2003 and her allegations that she experienced lower back pain with left leg radiculopathy for ten years prior. The letter also lists plaintiff's numerous diagnoses and an opinion that plaintiff "is completely and totally disabled[2] from all gainful employment." (Tr. 185). Notably, the letter does not include or reference any objective clinical studies or findings. *See* 20 C.F.R. §§ 404.1508 (impairment must be established by medical evidence consisting of signs, symptoms and laboratory findings, and not solely by claimant's statement of symptoms); 404.1528(a) (claimant's own description of impairment is not enough to establish existence of that impairment). There is no medical evidence in the record pre-dating plaintiff's date last insured of June 30, 1992. (Tr. 12).

---

[2] Dr. Chaney's opinion that plaintiff was "disabled" is not entitled to any deference. The ALJ was responsible for determining whether plaintiff met the statutory definition of disability prior to her date last insured based on the medical and vocational evidence in the record. *See* 20 C.F.R. § 404.1527(e)(1). A treating physician's "broad conclusory formulations, regarding the ultimate issue which must be decided by the Secretary, are not determinative of whether or not an individual is under a disability." *Kirk,* 667 F.2d at 538.

The ALJ's determination that plaintiff did not establish a medically determinable impairment at the time her insured status lapsed is also supported by the opinion of Dr. Shapiro, the reviewing state agency psychologist. (Tr. 167). Dr. Shapiro reported that there was insufficient evidence to proffer a medical opinion that plaintiff had a medically determinable mental impairment prior to June 30, 1992. *Id.*

Plaintiff contends the ALJ erred by not seeking additional evidence, relying on Dr. Shapiro's report of insufficient evidence and his notation that the nonmental impairments required referral to another specialist. Essentially, plaintiff argues that the ALJ should have developed the medical record for her. Plaintiff's argument is misplaced.

Plaintiff bears the burden of establishing a medically determinable impairment. *See Daniels v. Comm'r*, 70 F. App'x 868, 871 (6th Cir. 2003) (citing 42 U.S.C. § 1382c(a)(3)(A), (B)). Absent special circumstances,[3] the ALJ is not required to develop the medical record. *Wilson v. Comm'r*, 280 F. App'x 456, 459 (6th Cir. 2008). Here, plaintiff was represented by counsel and testified competently at the administrative hearing. Nothing in the record indicates the ALJ had a heightened duty to develop the record. *See Lashley*, 708 F.2d at 1051 (ALJ has heightened duty where plaintiff appears pro se, is incapable of presenting an effective case, and is unfamiliar with hearing procedures). Plaintiff, who was represented by counsel, opted to provide a deficient medical record, comprised of a single letter which did not address plaintiff's impairments prior to her date last insured of June 30, 1992. The ALJ considered the evidence

---

[3] *See, e.g., Lashley*, 708 F.2d 1048 (holding that ALJ erred by not developing record where pro se plaintiff was 79 years old, had a fifth grade education, had suffered two strokes and had difficulty reading, writing, and reasoning).

and reasonably determined that plaintiff did not suffer from a medically determinable impairment. *See* 20 C.F.R. § 404.1516 ("If you do not give us the medical and other evidence that we need and request, we will have to make a decision based on information available in your case.").

Moreover, the record demonstrates that the agency made numerous fruitless attempts to obtain medical records from plaintiff's medical providers. (*See* Tr. 153, 164-65). Accordingly, the ALJ's determination that the objective medical evidence did not support a finding that plaintiff suffered from a medically determinable impairment on or before her June 30, 1992 date last insured is supported by substantial evidence and should be affirmed.

## II. The ALJ did not erroneously discount plaintiff's subjective complaints in determining that she did not suffer from a medically determinable impairment.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers,* 486 F.3d at 247 (citations omitted). In this regard, Social Security Ruling 96–7p explains:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96–7p. However, Social Security Ruling 96-4p further provides:

> A "symptom" is not a "medically determinable physical or mental impairment" and no symptom by itself can establish the existence of such impairment . . . . In

16

> the absence of a showing that there is a "medically determinable physical or mental impairment," an individual *must be found not disabled at step 2* of the sequential evaluation process. No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment.

SSR 96-4p (emphasis added).

In the instant matter, the ALJ never made a credibility determination with regard to the veracity of plaintiff's statements concerning the intensity of her pain. Because the ALJ determined at step two of the sequential evaluation that plaintiff did not have a medically determinable impairment, he was not required to assess the credibility of her testimony. *Bowen*, 482 U.S. at 146, n.5 ("The claimant first must bear the burden at step one of showing that he is not working, at step two that he has a medically severe impairment or combination of impairments, and at step four that the impairment prevents him from performing his past work. If the process ends at step two, the burden of proof never shifts to the Secretary."). Plaintiff, nevertheless, argues that the ALJ should have given weight to plaintiff's complaints of disabling pain because such pain would be expected considering her diagnoses. In making this argument, plaintiff relies on *Duncan v. Sec'y of H.H.S.*, 801 F.2d 847 (6th Cir. 1986), which explains that an ALJ must consider whether a plaintiff's allegations of pain are reasonable in light of the objective medical evidence. However, plaintiff's argument completely ignores the prerequisite that, before credibility is assessed, the first determination is "whether there is objective medical evidence of an underlying medical condition." *Id.* at 853.

17

As discussed above, there was absolutely no objective medical evidence in the record supporting a determination that plaintiff suffered from a medically determinable impairment prior to her date last insured. As such, the ALJ was not required to determine whether plaintiff's subjective complaints of pain were credible. *See Higgs*, 880 F.2d at 862-63 (quoting *Farris*, 773 at 90 n.1) (finding that ALJ may "screen out claims that are 'totally groundless' solely from a medical standpoint."). Consequently, the plaintiff's assignments of error are without merit and the ALJ's decision should be affirmed.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 10/4/2011

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SONA SUE STATEN,

    Plaintiff

vs

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

    Defendant

Case No. 1:10-cv-864

Dlott, J.
Litkovitz, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

19